**In re SOUTHMARK CORPORATION, Debtor.**

**Bankruptcy No. 389–36324–SAF–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 1, 1990.

See also, Bkrtcy., 113 B.R. 269.

Neal Batson, examiner, Alston & Bird, Atlanta, Ga., David Campbell, Hale, Spencer, Goodman, Stanley, Pronske & Trust, local counsel, Dallas, Tex., for examiner.

R. Paul Wickes, Thompson & Knight, Dallas, Tex.

Andrew De Natale, Stroock & Stroock & Lavan, New York City.

Jesse H. Austin, III, Power, Goldstein, Frazer & Murphy, Atlanta, Ga.

George McElreath, United States Trustee, Dallas, Tex.

George Wade, Shearman & Sterling, New York City.

Martin F. Brecker, Anderson, Kill, Olick & Oshinsky, New York City.

Joel B. Piassick, Smith, Gambrell & Russell, Atlanta, Ga.

John Flowers, Locke Purnell Rain Harrell, Dallas, Tex.

## ORDER AUTHORIZING EMPLOYMENT OF PROFESSIONAL PERSONS BY THE EXAMINER

STEVEN A. FELSENTHAL,
Bankruptcy Judge.

The Bankruptcy Code does not expressly authorize the employment of professional persons by an examiner. Nevertheless, under the facts and circumstances of the Southmark Corporation bankruptcy case, employment of professional persons by the examiner is appropriate to carry out the examiner's investigation authorized by the Code.

Southmark filed its petition for reorganization under Chapter 11 of the Code in the Northern District of Georgia on July 14, 1989. Since that date Southmark has continued to manage its properties and operate its business as a debtor in possession. Effective October 3, 1989, this court transferred venue of the Southmark bankruptcy case to the Northern District of Texas.

Southmark and the United States Trustee filed motions seeking the appointment of an examiner under § 1104 of the Code. By order entered September 8, 1989, the court directed that the United States Trustee appoint an examiner to investigate and review any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the pre-petition management of Southmark and to recommend causes of action discovered in the course of the investigation and review. Southmark, the Official Committee of Unsecured Creditors, the Official Committee of Equity Security Holders and the United States Trustee consented to the appointment of the examiner. The order specifically contemplated that the scope of the examiner's charge would require that the examiner employ professional persons. By order entered September 8, 1989, the court approved the appointment of Neal Batson as the examiner.

The court approved the examiner's application to employ Alston & Bird as his attorneys by order entered September 14, 1989, subject to objection. The court provided 35 days after entry of the order for a party in interest to object to the appointment of the examiner and the examiner's employment of an attorney. No party in interest filed an objection.

Following the transfer of the Southmark case to the Northern District of Texas, by orders entered October 30, 1989, the court conditionally approved the employment by the examiner of Coopers & Lybrand as his accountants and the employment of Hale, Spencer, Stanley, Pronske & Trust, P.C., as his local Dallas counsel. As part of its management of the case, *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 373–374 (5th Cir.1987), the court requested that the United States Trustee review the employment of professional persons by the Southmark estate, including employment of professional persons by the examiner. The United States Trustee concluded that the scope of the examiner's role in the Southmark case supported employment of attorneys and accountants.

Following a hearing on December 8, 1989, on the issue of employment of professional persons by the Southmark estate, the court entered an order on December 18, 1989, directing, in relevant part, a hearing on January 10, 1990, on whether the Code authorizes the employment of professional persons by the examiner. At the January 10 hearing the United States Trustee, the examiner, Southmark, the creditors committee, the Resolution Trust Corporation and the Phoenician Commercial Properties, Inc., Crescent Lending Corporation, Amcor Investments Corporation, and American Founders Life Insurance Company urged this court to continue the employment of professional persons by the examiner. The equity security holders committee suggested that the court name Alston & Bird the examiner and direct that the examiner use the services of an accountant employed by a committee. At the conclusion of the hearing the court ruled that orders approving the employment of Alston & Bird, Coopers & Lybrand and Hale, Spencer would continue to govern until further ruling by the court.

### The Code

The Code does not specifically authorize an examiner to retain professional persons to assist in the performance of the examiner's duties. *In re Tarkowski*, 104 B.R. 828, 829 (Bankr.E.D.Mich.1989); *In re Tighe Mercantile*, 62 B.R. 995, 999–1000 (Bankr. S.D.Cal.1986); Bienenstock, *Bankruptcy Reorganization* p. 300 (1987); 5 *Collier on Bankruptcy.* para. 1104.04[2] (15th Ed. 1989); Snider, *The Examiner in the Reorganization Process*, 45 Bus.Law., November, 35, 52 (1989). The court may, however, issue any order necessary or appropriate to carry out the provisions of the Code. Section 105(a); *In re First RepublicBank Corp*, 95 B.R. 58, 60 (Bankr.N.D. Tex.1988). While the court may not invoke § 105(a) to create substantive rights that are not provided in the Code or to constitute a roving commission to do equity, the court may use § 105(a) to fashion orders that are necessary or appropriate to further a substantive provision of the Code. *See, Browning v. Navarro*, 887 F.2d 553, 559 (5th Cir.1989); *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986). Thus § 105(a) may be invoked where appropriate to allow the examiner to carry out those duties authorized by the Code. *See, Tighe*, 62 B.R. at 1000.

Section 105(a) powers may be invoked by a court when "necessary or appropriate to carry out the provisions of [the Code]." The Code authorizes an investigation of the debtor. Under § 1104(b) an examiner may be appointed "to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor." The court must first determine whether employment of professional persons by an examiner is "necessary" to carry out the Code's substantive provisions authorizing an investigation of the debtor. If not "necessary," the court must then determine whether employment of professional persons by an examiner is "appropri-

ate" to carry out the Code's substantive provisions authorizing an investigation of the debtor in this particular case.

A committee of creditors or equity security holders appointed under § 1102 of the Code may investigate the very matters addressed in § 1104(b). Section 1103(c)(2). A committee may employ professional persons to perform services for the committee. Section 1103(a). If appropriate under § 1104(a), the court may appoint a trustee. The trustee may investigate the debtor's acts and conduct. Section 1106(a)(3) & (4). The trustee may employ professional persons. Section 327. The Code therefore authorizes employment of professional persons by an entity specifically authorized to investigate the debtor's acts and conduct. Since an examiner is not necessary to carry out the investigation, employment of professional persons by the examiner is likewise not necessary. Use of § 105(a) powers to authorize the examiner to employ professional persons is not "necessary" to carry out the Code's provisions authorizing an investigation of the debtor.

Nevertheless, under the facts and circumstances of a particular case, in the court's discretion, use of § 105(a) powers to authorize the examiner to employ professional persons to assist in investigating the debtor under § 1104(b) may be "appropriate" to carry out the Code's substantive provisions authorizing the investigation. An investigation of allegations of fraud, dishonesty, incompetence, mismanagement or irregularity in the management of the affairs of a debtor may require a disinterested person holding a non-adversarial position. The investigation may involve major unsecured creditors or holders of a substantial amount of equity security in a debtor thereby precluding an investigation by a committee. In that instance the best interests of the estate may require that the investigation be conducted by an examiner. Section 1104(b)(1).

The Code authorizes a court-ordered trustee to conduct an investigation of the debtor's pre-petition acts and conduct. Sections 1104(a)(1) and 1106(a)(3). The trustee may employ professional persons to assist in the investigation. Section 327. However the Code contemplates that the debtor and its management will continue to operate the debtor's business as the debtor in possession. Sections 1107 and 1108. Cause may not exist to remove the debtor's post-petition management by the appointment of a trustee. Section 1104(a)(1). The best interests of the estate may not be served by the appointment of a trustee. Section 1104(a)(2). Consequently an investigation of a debtor's pre-petition acts and conduct may be appropriately charged to an examiner when appointment of a trustee would not otherwise be appropriate.

The best interests of an estate may also dictate that the creditors and equity security holders devote their resources to the active pursuit of a viable plan of reorganization. Section 1103(c)(3). In a complex mega-case the task of reorganization may be so substantial that the committees conclude they should request the appointment of an examiner to conduct an investigation of a debtor's activities while they concentrate on the reorganization effort. Section 1103(c)(4).

In these instances a court may order the appointment of the examiner to conduct the investigation described in § 1104(b). In a complex, mega-case the investigation may require the services of lawyers, accountants and other professionals. While a court could direct the appointment of a law firm as the examiner, *see, Tarkowski*, 104 B.R. at 830; 5 *Collier on Bankruptcy* at para 1104.04[2], that does not help an examiner who also requires the services of an accountant to discharge his duty to investigate the debtor's acts and conduct. While the court could direct that the appointed examiner use the services of the committee's court-approved accountant, that might defeat the objective of a disinterested examiner not associated with or serving creditors or equity security holders. That might also defeat the objective of permitting a committee's professionals to devote their attention to reorganization. These objectives may have originally prompted the finding that the best interests of the estate mandated the appointment of an examiner to perform the investigation. Thus,

as discussed by the *Tighe* court, failure to authorize the examiner to employ professional persons may work a hardship on the estate or result in the practical inability of the examiner to perform the investigation. *See, Tighe,* 62 B.R. at 1000. Under those circumstances, use of § 105(a) to approve the employment of professional persons by an examiner is appropriate to carry out the substantive provisions of the Code.

A court should consider whether it is appropriate under § 105(a) to authorize an examiner to employ professional persons at the time of the motion for the appointment of an examiner. Since the Code does not specifically authorize an examiner to employ professional persons, the court should conduct an evidentiary hearing on the motion to appoint an examiner to determine if the appointment might require the employment of professional persons by the examiner and, if so, whether approval utilizing § 105(a) would be appropriate under the facts and circumstances of the case. The hearing would provide the court with a process to assess the costs and benefits to the estate of appointing an examiner to perform a particular function. Thus, if the examiner would be charged to investigate and report on potential causes of action, the court can assess whether the benefits of having an examiner armed with professional persons, if appropriate, conduct the investigation outweigh the costs of duplicative analysis should a court determine that the Code does not authorize the examiner to prosecute the recommended litigation.

### The Case

Based on Southmark's assets on the date of its Chapter 11 petition, the Southmark bankruptcy constitutes one of the largest and most complex commercial bankruptcy filings in United States history. A diversified real estate-based financial services company whose principal business is the purchase, management, development and sale of real estate and the creation and sales of real estate related investment products, Southmark and its subsidiaries and affiliates reported assets on the petition date of $5.3 billion and liabilities of $5.7 billion on a consolidated basis. South-

mark owns all the common stock of San Jacinto Savings Association, a federally insured Texas-chartered savings and loan association. Because of its ownership of San Jacinto, Southmark is considered a savings and loan holding company subject to supervision and regulation by the Office of Thrift Supervision. Southmark also owns two insurance companies which are subject to state regulation.

Southmark has over 800 affiliates and subsidiaries and has connections with numerous public and private partnerships.

Southmark's current financial advisor describes Southmark's pre-petition corporate structure as a wagon wheel with dozens of spokes but without a rim and with a defective axle. According to the financial advisor, two officers ran Southmark pre-petition without sufficient corporate controls. The financial advisor testified at a hearing on Southmark's motion to extend its exclusive period to file a plan of reorganization that Southmark either failed to keep or kept incomplete or disorganized records pre-petition and had no central filing system.

Southmark's current accountants filed a year-end audit which reported an approximate $1 billion write-down in the value of Southmark's assets changing what appeared to be a corporation with equity for its equity security holders to a corporation with over $400,000,000 negative equity. This court has authorized the equity security holders committee to conduct a series of Rule 2004 examinations to inquire into the nature of this decline in value.

Against this background Southmark and the United States Trustee sought the appointment of an examiner to investigate its pre-petition acts and conduct. The creditors committee consented to the appointment. Southmark has announced that it must move expeditiously toward reorganization or face liquidation. The creditors committee agrees. Both Southmark and the committee therefore urge the court that use of an examiner is appropriate to conduct the investigation of Southmark's pre-petition acts and conduct. The equity security holders consented to the examiner's appointment while reserving the right

to investigate the value of Southmark's assets. Other creditors supported the appointment.

Numerous allegations concerning Southmark's pre-petition activities have been made. These activities may involve creditors and equity security holders. The examiner has already filed an interim report recommending that Southmark seek to recover, as avoidable transfers, property with an assumed value of approximately $11,000,000 which was transferred into two grantor trusts within eight months prior to Southmark's Chapter 11 petition for the purpose of assuring payment of any indemnification claims filed by Southmark's officers and directors. The examiner has also initially concluded that Southmark should seek to recover assets valued over $50,000,000 resulting from a settlement between Southmark and certain former officers consummated within six months of the bankruptcy filing. The examiner is now investigating over $300,000,000 in transfers made by Southmark within 90 days of its Chapter 11 filing to determine whether any constitute avoidable preferences.

Under the facts and circumstances of this case, the court affirms the prior finding that the best interests of this estate compel the appointment of a disinterested, non-adversarial person with no connections to Southmark's creditors or equity security holders to investigate Southmark's pre-petition acts and conduct. The best interests of this estate also compel the appointment of an examiner to conduct the investigation to allow the committees to devote their attention to Southmark's reorganization activities. No party in interest has suggested that Southmark should be placed in the hands of a trustee.

To perform the investigation authorized by the Code, the examiner requires the services of attorneys and accountants. The scope of the investigation, Southmark's size and complexity, and the nature of Southmark's pre-petition activities establish that the examiner cannot discharge his duty to perform the investigation and file his report with the court without employing professional persons. Forcing the in-

vestigation back on one of the committees or appointing a trustee, if requested, would not be in the best interests of the estate at this stage of the proceedings. The court therefore concludes that approval of the employment of professional persons by the examiner under the authority of § 105(a) in this case is appropriate to carry out the provisions of the Code.

### The Final Determination

A party in interest may at an interim or final fee application challenge the authority to pay the examiner's professionals from the estate. *Tarkowski*, 104 B.R. at 830 n. 2. However, the court may identify a determination by the court which is intended to put a matter to rest. *See, Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1322 (5th Cir.1989). The court intends that this approval of employment of professional persons by the examiner constitutes a final determination of the authority of the examiner to employ and hence to pay from the estate professional persons. Hearings on fee applications by the examiner's professionals will be limited to the reasonable amount of compensation and the actual, necessary expenses to be paid under the Code.

The approval of Alston & Bird as the examiner's counsel is confirmed, effective September 14, 1989. The approval of Coopers & Lybrand as the examiner's accountants is confirmed, effective September 26, 1989. Based on the court's order entered December 18, 1989, the examiner has applied for the continued employment of Hale, Spencer as local counsel. Because of the different nature of the examiner's duties compared to the committees, the court approves the continued retention of Hale, Spencer but limited to non-duplicative services of attending court hearings when the examiner or Alston & Bird do not or need not appear, serving papers in the Dallas area and assisting the examiner in his investigation in Dallas.