In re **SOUTHMARK CORPORATION,**
**Debtor.**

**Bankruptcy No. 389–36324–SAF–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 1, 1995.

Judgment Modifying Final Order
April 4, 1995.

Robert B. Krakow, Gibson, Dunn & Crutcher, Dallas, TX, for Southmark Corp., movant.

Judith Elkin, Haynes and Boone, L.L.P., Dallas, TX, Michael S. Feldberg, Schulte Roth & Zabel, New York City, for Coopers & Lybrand, respondent.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Southmark Corporation moves the court under Bankruptcy Rule 9024 for relief from the final order awarding compensation to Coopers & Lybrand. The Southmark examiner employed Coopers to do accounting investigatory work. Coopers had performed accounting and auditing work for Drexel Burnham Lambert. Southmark contends that Coopers failed to disclose to the court, in violation of the Bankruptcy Code and court order, that, during its engagement by the examiner, it discontinued an investigation of

certain issues pertaining to Drexel's transactions with Southmark. Southmark asserts that this non-disclosure requires relief from the compensation award and a disgorgement of compensation because Coopers held an interest materially adverse to the bankruptcy estate. The court conducted an evidentiary hearing on December 20, 1994, at which, by stipulation, the parties submitted the issue on a written record.

The determination of compensation under 11 U.S.C. § 330(a) for professional persons employed under 11 U.S.C. §§ 105(a) and 327(a) constitutes a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(A) and (O) and 1334. By Bankruptcy Rule 9024, this court may grant relief from such a final order. This memorandum opinion contains the court's findings of fact and conclusions of law required by Bankruptcy Rules 7052 and 9014.

Bankruptcy Rule 9024 applies Fed. R.Civ.P. 60(b). By order entered June 6, 1994, the court dismissed claims for relief under Rule 60(b)(2) and (3) but held that Southmark's motion alleged a claim for relief from the final order under Rule 60(b)(6). The court must determine whether Southmark has established a basis to order a disgorgement of compensation under Rule 60(b)(6).

The court adopts as findings of fact the parties' statement of stipulated facts in the pretrial order.

Southmark filed its petition for relief under Chapter 11 of the Bankruptcy Code on July 14, 1989. By order entered September 8, 1989, the court directed that the United States Trustee appoint an examiner to investigate and review allegations of fraud, dishonesty, incompetence, mismanagement or irregularity in the pre-petition management of Southmark and to recommend causes of action discovered in the course of the investigation and review. On the same day the court approved the appointment of Neal Batson as the examiner.

By order entered October 30, 1989, the court conditionally approved the employment by the examiner of Coopers as his accountants. By order dated February 1, 1990, the court confirmed the approval of the examiner's retention of Coopers, effective as of September 26, 1989. *In re Southmark Corp.,* 113 B.R. 280, 284 (Bankr.N.D.Tex.1990).

Drexel Burnham Lambert provided investment banking and financial consulting services to Southmark pre-petition. Indeed, Drexel had been Southmark's investment banker on the one billion dollar high risk bonds that were unpaid on the date of the bankruptcy petition. Southmark had extensive dealings with Drexel. In support of its eligibility for employment, Coopers disclosed, by sworn affidavit, that "it provides accounting and consulting services for Drexel in matters unrelated to this case." Coopers did not disclose to the court that it also provided audit services for Drexel. Coopers did not disclose to the court that Drexel paid Coopers approximately $6.7 million for 1987 services, $6.9 million for 1988 services and $4.9 million for 1989 services. The examiner stated in the employment application that, "[t]o the best of Examiner's knowledge, said accounting firm is eligible and qualified to represent the Examiner."

Prior to the examiner's appointment Drexel had pled guilty to federal criminal charges and had agreed to a comprehensive consent decree with the Securities and Exchange Commission settling a civil complaint filed by the SEC. Under the consent decree, a $650 million fund was established to satisfy civil securities claims against Drexel, as well as for other matters. On February 13, 1990, Drexel's parent, the Drexel Burnham Lambert Group, Inc., filed a petition for relief under Chapter 11 of the Bankruptcy Code. The Drexel bankruptcy court set a November 15, 1990, bar date for filing proofs of claims against the Drexel Group.

The examiner's charge covered Southmark's pre-petition transactions with Drexel.

The court conducted two hearings concerning employment of professional persons by the examiner. Coopers' disclosure notwithstanding, Southmark did not object to the employment.

The court determined that the examiner could employ professional persons under

§ 105(a) in this case. *Southmark,* 113 B.R. at 284. Employment eligibility and compensation standards were based, however, on §§ 327(a) and 330(a). *Id.* Under § 327(a), Coopers could not hold or represent an interest adverse to the bankruptcy estate and had to be disinterested as defined by § 101(14). Bankruptcy Rule 2014 requires that a professional person seeking employment in a bankruptcy case submit a "verified statement ... setting forth the person's connections" to the debtor, creditors and other parties in interest. Section 328(c) provides that the court may deny compensation for a professional person employed under § 327 if, at any time during that employment, the person is not disinterested or holds or represents an interest adverse to the interest of the estate with respect to the matter on which the person is employed.

By order dated December 15, 1989, this court directed:

> If any party in interest contends that any professional ... has a conflict of interest that would affect the professional's right to receive compensation, provided the alleged conflict has been disclosed, the party in interest shall raise its contention at the first hearing on interim compensation following the disclosure or shall thereafter be estopped from doing so.

Southmark did not contend at the first interim compensation hearing that Coopers' disclosed work for Drexel constituted a disqualifying conflict.

The court further ordered that all professional persons had a "continuing obligation to disclose any matter that may affect qualification for court-approved employment under the Bankruptcy Code or disqualification under any relevant ethical consideration."

Coopers engagement team included partners David Carpenter and Knute Kurtz and managers William Galbally, Selene Yu, David Kennedy and Steve Schockett. Carpenter assigned Galbally to investigate possible claims against Drexel. Galbally began his investigation of Drexel in late October 1989. From October 1989 to early December 1989, Galbally billed under 16 hours for Drexel-related work. Galbally's investigation consisted of reviewing materials available in the public domain such as news articles regarding Drexel's activities with Southmark. Galbally also reviewed Drexel brokerage firm materials and Southmark's 1989 Annual Report.

In December 1989, based upon his initial investigation, Galbally concluded that Southmark possibly had significant securities' claims against Drexel that warranted further investigation. Galbally updated Kurtz on the status of his Drexel investigation and expressed his desire to investigate further. On the evening of December 4, 1989, Carpenter and Kurtz met with Galbally at Galbally's apartment to discuss a presentation that Galbally delivered to the examiner earlier that day on non-Drexel related matters. Galbally again voiced his enthusiasm to the partners about the Drexel investigation and presented Carpenter with a Wall Street Journal article about Drexel.

Carpenter, however, decided to reassign Galbally. Galbally could either be transferred to Philadelphia to work on other engagements or to Atlanta to work on Southmark preference issues with Kennedy. Galbally chose the latter and was transferred to Atlanta. Carpenter then reassigned responsibility for gathering the underlying facts supporting Southmark's potential securities claims against Drexel to Jeffrey Kessler. Kessler did not have investigatory experience. After the reassignment, Coopers billed the examiner over two hundred hours for work involving Southmark transactions with Drexel. Coopers analyzed transfers from Southmark to Drexel for avoidability under Chapter 5 of the Bankruptcy Code. Coopers also investigated and reported to the examiner how Southmark invested the proceeds of the high risk bonds capitalized in the market through Drexel's investment banking services. Coopers did not pursue the securities claims.

Coopers did not file a supplemental disclosure with the court informing the court that it would not investigate potential Southmark securities claims against Drexel.

On April 17, 1990, the examiner informed Southmark regarding Drexel claims. The examiner recognized that Southmark may

have securities claims against Drexel but informed Southmark that he would not devote additional resources to further investigate those claims. He reminded Southmark about the Drexel civil disgorgement fund and encouraged Southmark's counsel to pursue the Drexel issues. The examiner deployed his resources based on the time restraints created by the court's setting of the Southmark confirmation hearings and the Drexel bankruptcy. Because of the exigencies regarding the confirmation process, Southmark did not then pursue the Drexel claims.

The court conducted a hearing on Coopers' application for final allowance of compensation and reimbursement of expenses on November 14, 1990. The court entered its final order on that matter on March 5, 1991, awarding Coopers' approximately $3.7 million. Southmark filed this motion for relief from that order on January 4, 1994.

Coopers disclosed to the court that it provided accounting and consulting services for Drexel on matters "unrelated to this case." Coopers did not disclose to the court that the work included audit services. Coopers did not disclose to the court that Drexel paid Coopers $18.5 million for those services during the 2½ years before the Southmark bankruptcy petition. During the course of Coopers employment, Coopers did not disclose to the court that it recognized but did not pursue an investigation of Southmark securities claims against Drexel.

■ Based on this court's order entered June 6, 1994, the court must determine whether these non-disclosures support relief under Rule 60(b)(6). Southmark contends that had the disclosures been made, the court would have found an adverse interest or would have found that Coopers was not disinterested for purposes of continued employment under § 327 and for payment under §§ 328(c) and 330(a). Southmark argues that the effect amounts to a fraud on the court. The continuing disclosure obligation imposed by the court pursuant to the Bankruptcy Code implicates a public policy interest justifying relief from the judgment under Rule 60(b)(6).

The court must determine employment standards and compensation under the Code. To enable the court to fulfill that function, the professional person must make a full disclosure under Rule 2014 of all its connections with the debtor, creditors or parties in interest. It must make a full disclosure of any entity that might have an interest adverse to the estate. By court order, the professional person employed in this case had a continuing obligation to disclose these connections as they become known or developed. Southmark specifically argues that the activities violate the public interest in the fair and equitable treatment of creditors and violate Coopers' duties to the court, thereby threatening the integrity of the judicial process that is designed to assure that the examiner employ only disinterested professional persons who hold or represent no interest adverse to the bankruptcy estate. *See Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994); *In re Leslie Fay Companies, Inc.,* 175 B.R. 525, 532 (Bankr.S.D.N.Y.1994). Southmark contends that Coopers non-disclosures amount to a fraud on the court, supporting relief from the final compensation order under Rule 60(b)(6).

■ A professional person who is not disinterested or who holds or represents an interest adverse to the estate may not be employed under § 327(a). A professional person not eligible for employment under § 327(a) may not be compensated under § 330(a) and may be subject to the denial of compensation under § 328(c). *In re Federated Department Stores, Inc.,* 44 F.3d 1310 (6th Cir.1995). Compensation should not be allowed for services rendered by a professional person who holds conflicting interests even if no fraud or unfairness resulted from the conflict. *Woods v. City National Bank & Trust Co. of Chicago,* 312 U.S. 262, 266, 61 S.Ct. 493, 85 L.Ed. 820 (1941) (under the Bankruptcy Act). The bankruptcy court cannot speculate on what might have been in the absence of a conflict. Where an actual conflict arises, compensation should be denied. *Id.*

Because the court must apply this statutory and case law in the context of a Rule 60(b)(6) motion, the court must focus on the non-disclosures to the court. Pre-petition,

Drexel had pled guilty to a criminal charge and had entered a consent decree with the SEC establishing a $650 fund for securities claims. Drexel had been Southmark's investment banker and advisor. Southmark owed $1 billion of high risk bond claims. Within 90 days of its bankruptcy petition, Southmark wrote down the value of its assets by $1 billion eliminating any equity for its publicly traded stock. *See, Southmark,* 113 B.R. at 283. Coopers was engaged by the examiner to investigate Southmark's transactions with, among others, Drexel. Coopers disclosed that it had performed accounting work for Drexel.

Coopers did not inform the court that the accounting work included auditing work and resulted in $18.5 million in fees in the 2½ years before the Southmark bankruptcy case. Coopers investigated transfers by Southmark to Drexel for avoidance analysis and investigated Southmark's investment of high yield bond funds. But when it came time to investigate Southmark's securities claims against Drexel, Coopers pulled its staff, did not pursue the investigation and did not disclose this activity to the court.

Wall Street Journal newspaper articles were already articulating a basis for securities claims. Coopers knew about those articles. Galbally expressed a desire to pursue those claims. Carpenter removed Galbally from the assignment. The parties dispute the actual exchange between Carpenter and Galbally when Carpenter removed him from the assignment. The testimony conflicts. But the actual exchange is not relevant. All that matters is what Coopers actually did or did not do and what Coopers did or did not disclose to the court. Coopers did not pursue the Southmark securities claims against Coopers' client, Drexel. Coopers reassigned its investigatory personnel. Coopers did not inform the court of the magnitude of its work for Drexel. It is one thing to analyze avoidance actions under the Bankruptcy Code or what Southmark did with the high yield bond revenue, it is another thing to investigate securities issues against a client that has paid the accountant $18.5 million in 2½ years, has pled guilty to criminal charges, has entered a consent decree with the SEC establishing a

$650 fund and whose parent has filed a Chapter 11 petition.

■ The court finds that Coopers' failure to fully disclose connections and activities with and regarding Drexel prevented the court from fully performing its function under the Bankruptcy Code and thereby frustrated the purposes of the Code to assure that the professional person employed by the examiner tenders undivided loyalty and provides untainted advice and assistance. *Rome,* 19 F.3d at 58. The court, not the applicant or the professional person, must make the assessment of the § 327(a) criteria. The professional person must disclose and continue to disclose all connections that may effect employment eligibility. *Rome,* 19 F.3d at 58–60. Failure to do so constitutes a basis for relief from the compensation order under Rule 60(b)(6).

The court entered an order requiring continuing disclosure and a procedure for timely and fairly adjudicating the effects of the disclosures. Coopers should have disclosed that its accounting work for Drexel included audit work and the amount of the fees paid by Drexel. When the securities claims theories emerged and Drexel reassigned its personnel, in effect, terminating an investigation of those claims, Coopers should have disclosed to the court that it would not be pursuing those claims. Under the court's procedure, the issue of disinterestedness and material adverse interest would have been addressed at the next interim compensation hearing. The issue would have been resolved, protecting Southmark and its estate, and, for that matter, Coopers and the examiner. The integrity of the Drexel analysis would have been preserved by the resulting court determinations.

■ A total disgorgement of compensation could be required. *Federated Department Stores,* 44 F.3d at 1319. Bankruptcy courts, however, usually assess compensation disgorgement issues under the particular facts of each case. *Matter of Prudhomme,* 43 F.3d 1000, 1004 (5th Cir.1995); *see, also, Leslie Fay,* 175 B.R. at 533 (discussing conflict analysis). While courts should tend to deny compensation when a professional person holds an interest adverse to the bank-

ruptcy estate or is not disinterested, the court must nevertheless exercise discretion under the facts of a case to assure appropriate relief in complex circumstances. *Gray v. English,* 30 F.3d 1319 (10th Cir.1994). The court ultimately then must engage in a fact specific inquiry in which the court may balance benefit and/or harm to the estate, time and labor employed, egregiousness of the professional person's non-disclosure, and so forth. *See In re Kendavis Industries Intern., Inc.,* 91 B.R. 742 (Bankr.N.D.Tex. 1988).

Southmark concedes that Coopers performed valuable services for the examiner on matters not involving Drexel. Indeed Southmark employed Coopers post-confirmation to assist with its proof on the numerous avoidance actions filed in this court. Southmark has recovered substantial sums from its avoidance actions.

Coopers did not cause Southmark to fail to file timely proof of claim in the Drexel bankruptcy case. The examiner alerted Southmark to the Drexel proof of claim bar date and that the examiner would not be developing the securities claims. The basis for the claim was already being suggested in the media. Southmark made conscientious decisions on the deployment of its resources.

Yet, Southmark might have pursued a significant claim against Drexel. Indeed Southmark will likely recover a substantial sum in the range of $20 million from Michael Milken, the director of Drexel's high yield department.

Coopers held a material adverse interest to the bankruptcy estate concerning Drexel. Drexel had paid Coopers $18.5 million in the 2½ years before the bankruptcy petition. Yet Coopers only disclosed that it provided consulting and accounting services to Drexel not related to Southmark. Coopers did not investigate the securities claims against Drexel. Coopers did not disclose to the court that it would not. Drexel had a significant involvement in Southmark's financial transactions, effecting unpaid claims against the Southmark estate and virtually worthless equity securities. Coopers employment should not have extended to any work regarding Drexel because it held a materially adverse

interest to the bankruptcy estate. The examiner's decision not to pursue the Drexel investigation based on time constraints has no bearing on Coopers failure to disclose to the court.

The court concludes that Coopers should disgorge compensation paid in connection with work regarding Drexel. Coopers introduced evidence that Drexel-related fees for the examiner amounted to $55,000. The court accordingly orders a disgorgement of $55,000.

Coopers assignment in the case would have been altered had it made full disclosures. Had it told the court that it had effectively terminated the securities claims investigation on December 4, 1989, the development of those claims would have proceeded on a different basis. Had this issue been confronted in December 1989, the examiner and Southmark would have faced different circumstances concerning Drexel when the examiner confronted his time constraints in April 1990, and when Southmark made its decisions regarding deployment of its available resources to address the exigencies it faced. While the non-disclosure did not cause Southmark to fail to timely file a proof of claim in the Drexel case, the non-disclosure impeded the court's function to assure the integrity of an investigation by professional persons with undivided loyalty. The court should not be left to speculate on how the securities claim against Drexel would have been investigated. Considering the recovery from the Milken litigation, the court must treble the disgorgement amount for an additional sanction of $165,000.00.

Coopers must also reimburse Southmark for the costs and attorneys fees incurred in prosecuting this motion.

### Conclusion

Southmark shall recover $220,000.00 from Coopers plus Southmark's attorneys fees and expenses in prosecuting this motion. This amount shall bear post-judgment interest from the date of entry of an order pursuant to Title 28, United States Code. Counsel for Southmark shall file an affidavit detailing the costs and fees incurred by Southmark in prosecuting this motion. Counsel for South-

mark shall also prepare an order granting relief from the final order entered March 5, 1991, pursuant to this ruling and an order granting recovery in the specified amounts.

### JUDGMENT MODIFYING FINAL ORDER

Southmark Corporation ("Southmark"), pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure, incorporating Rule 60(b)(6) of the Federal Rules of Civil Procedure, having sought relief from a final order dated March 5, 1991 (the "Final Order") which Final Order awarded compensation to Coopers & Lybrand ("Coopers"), and the same having come on for trial on December 20, 1994,

UPON Southmark's Motion to Reconsider Award of Fees to Coopers & Lybrand (the "Motion") dated January 4, 1994, this Court's order dated May 31, 1994 authorizing Southmark to proceed pursuant to Rule 60(b)(6), the evidence adduced at trial, the oral and written arguments of counsel for Coopers and Southmark, the Affidavit of Robert B. Krakow In Support of Award of Attorneys' Fees and Expenses to Southmark Corporation From Coopers & Lybrand, and the Court having made and filed its Memorandum Opinion and Order dated February 27, 1995, it is hereby

ORDERED that the Final Order should be modified. It is further

ORDERED that Coopers shall disgorge $220,000.00 of fees awarded pursuant to the Final Order. It is further

ORDERED that Southmark shall recover from Coopers attorney's fees of $319,514.63 and expenses of $45,527.85 incurred in prosecuting the Motion. It is further

ORDERED that the amount of $585,042.48 shall incur post-judgment interest from the date of entry of this Order pursuant to Title 28 of the United States Code.