**In re SOUTHMARK CORPORATION, Debtor.**

**SOUTHMARK CORPORATION, Plaintiff,**

**v.**

**SCHULTE, ROTH & ZABEL, Defendants.**

**Bankruptcy No. 389–36324–SAF–11. Adversary No. 391–3364.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

March 24, 1997.

Larry Chek, Jenkens & Gilchrist, Dallas, TX, for Plaintiff.

Robin Phelan, Haynes and Boone, L.L.P., Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Southmark Corporation moves the court for a summary judgment under 11 U.S.C. §§ 547 and 550 against Schulte, Roth & Zabel for $1,000,000 plus interest. Schulte, Roth cross-moves for partial summary judgment. The court conducted a hearing on the motions on December 17, 1996.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988). On a summary judgment motion the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. A factual dispute bars summary judgment only when the disputed fact is determinative under governing law. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

The movant bears the initial burden of articulating the basis for its motion and identifying evidence which shows that there is no genuine issue of material fact. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court applies the same standards to the cross motion for partial summary judgment.

Southmark contends that it may recover $1,000,000 from Schulte, Roth resulting from payments to the Parks Group to settle a proxy contest and related litigation. Southmark reimbursed the Parks Group $3.3 million for its costs and expenses, including legal fees, incurred in conducting the proxy contest and related litigation. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark),* 88 F.3d 311, 313–314 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 686, 136 L.Ed.2d 611 (1997). This court had dismissed the complaint, holding that before the settlement, Southmark had no enforceable liability to pay the Parks Group costs and expenses, and, therefore, did not make the transfer for or on account of an antecedent debt owed by the debtor before the transfer was made. The District Court affirmed, 88 F.3d at 314, but the Fifth Circuit reversed. While recognizing that the case "presents a rare if not unique fact situation," the Circuit held that a bright line broad statutory standard should be applied. 88 F.3d at 318. The Supreme Court has denied Schulte, Roth's petition for a writ of certiorari. *Schulte Roth & Zabel v. Southmark Corp. (In re Southmark Corp.),* —— U.S. ——, 117 S.Ct. 686, 136 L.Ed.2d 611 (1997). As a result, both Southmark and Schulte, Roth recognize that the Fifth Circuit has established the law of this case. In its motion, Southmark requests a determination that with the Fifth Circuit's holding, there are no genuine issues of material fact concerning the elements of 11 U.S.C. § 547(b). Without waiving its position con-

cerning transfer on account of an antecedent debt owed, Schulte, Roth concedes that Southmark is entitled to a determination that it has established the elements of § 547(b).

Schulte, Roth counters, however, that the transfer had been made in the ordinary course of business, 11 U.S.C. § 547(c)(2), or had been contemporaneously made in exchange for new value, 11 U.S.C. § 547(c)(1). Southmark moves for summary judgment on both defenses. Schulte, Roth moves for summary judgment on the contemporaneous exchange defense but otherwise requests that the court set the defenses for trial. On both defenses, Schulte, Roth recognizes that at trial it has the burden of proof, 11 U.S.C. § 547(g), but contends that it has presented summary judgment evidence demonstrating genuine issues of material fact requiring a trial. With regard to the ordinary course of business defense, the court agrees with Schulte, Roth that there are genuine issues of material fact requiring a trial. With regard to the contemporaneous exchange defense, however, Southmark is entitled to a partial summary judgment based on the statutory definition of "new value."

Under § 547(c)(2), a trustee may not avoid a preferential transfer "(2) to the extent that such transfer was (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms." 11 U.S.C. § 547(c)(2). The purpose of the ordinary business course defense is to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 373 (1977), *cited in In re SPW*, 96 B.R. 683, 685 (Bankr. N.D.Tex.1989). The court must determine, using an objective and a subjective standard, whether the transfer was made in the ordinary course. 96 B.R. at 687. This court must look to the parties' course of dealing and the industry's course of dealing.

Southmark contends that it does not ordinarily incur obligations to compensate shareholders for their expenses in connection with a proxy context. Southmark presents summary judgment evidence suggesting that incurring the debt is extraordinary. Southmark relies on a line of cases holding that settlement of litigation is outside the ordinary course of business. *In re Florence Tanners, Inc.*, 184 B.R. 520, 521–522 (E.D.Mich.1995); *Hickey v. Nightingale Roofing, Inc.*, 83 B.R. 180, 184–185 (D.Mass. 1988).

Schulte, Roth contends that complex publicly traded companies often face proxy contests, arguing that corporate governance matters constitute an ordinary course of business for publicly traded companies. Schulte, Roth presents summary judgment evidence suggesting that the Parks Group proxy contest had been resolved in the ordinary course of Southmark's business, consistent with the ordinary course resolution for publicly traded companies.

Schulte, Roth faces a difficult hurdle at trial. However, the court recognizes that in the spring of 1989, Southmark was a vast and complex publicly traded holding company, characterized as a diversified real estate-based financial services company. While its subsidiaries principally engaged in the purchase, management, development and sale of real estate and the creation and sales of real estate related investment products, Southmark also owned all the common stock of San Jacinto Savings Association, a federally insured Texas-chartered savings and loan association, and two insurance companies. Southmark had over 800 affiliates and subsidiaries and connections with numerous public and private partnerships. *In re Southmark*, 113 B.R. 280, 283 (Bankr.N.D.Tex. 1990). The summary judgment evidence establishes genuine issues of material facts concerning whether diversified publicly traded companies respond to or encounter proxy contests in the ordinary course of their corporate governance and affairs, and, if so, whether this proxy contest was resolved within the standards of § 547(c)(2). The case law relied on by Southmark does not address § 547(c)(2) in the context of corpo-

rate governance of a publicly traded company.

Under § 547(c)(1), a trustee may not avoid a preferential transfer—"(1) to the extent that such transfer was—(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1).

■ While the parties have engaged in an interesting legal argument over "contemporaneous exchange," in light of the Fifth Circuit's holding on "antecedent debt owed," this court need not decide that issue. Even if Schulte, Roth established a "contemporaneous exchange," the exchange was not for "new value." The Bankruptcy Code defines "new value" for purposes of this defense as:

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation. 11 U.S.C. § 547(a)(2).

The summary judgment evidence establishes that the Parks Group did not provide Southmark money or money's worth in goods or new credit in exchange for the $3.3 million transfer. The Parks Group did not release property or the proceeds of property. The Parks Group obtained seats on the Southmark Board of Directors, agreed to vote its shares in support of Southmark's nominees to the board and not use those votes to nominate additional representatives of the Parks Group, and agreed not to engage in another proxy contest or any other form of corporate takeover. As a result of these agreements, Schulte, Roth contends that the Parks Group provided new value to Southmark by its contribution to Southmark's corporate governance.

The agreement itself does not result in the provision of services to Southmark. The Parks Group nominees took their seats as board members. The Parks Group honored its agreements regarding the casting of ballots and the exercise of its corporate governance authority. Southmark compensated the Parks Group board members by the payment of fees and expenses in exchange for the rendering of their corporate governance services. There is no genuine issue of material fact that the Parks Group did not render services in exchange for the transfer. Furthermore, even if the agreement could be construed to result in the rendering of services, there is no genuine issue of material fact that the "services" could be measured in "money" or "money's worth," especially since Southmark separately compensated each board member $50,000 on June 25, 1989, plus $4,166.67 per month beginning on June 25, 1989. Southmark is therefore entitled to a partial summary judgment dismissing this defense.

Assuming Southmark prevails at trial on the remaining defense of ordinary course of business, Southmark requests a money judgment under 11 U.S.C. § 550. Schulte, Roth contends that it was not a subsequent transferee of $1,000,000 of the $3.3 million transferred to the Parks Group, 11 U.S.C. § 550(a)(2), but, if it was, it took it in good faith, for value and without knowledge of the voidability of the transfer. 11 U.S.C. § 550(b). Both parties move for summary judgment on these issues.

■ The summary judgment evidence regarding payment of Schulte, Roth fees by the Parks Group after the $3.3 million transfer by Southmark involves transactions of at least three entities with three financial institutions. The court concludes that there are genuine issues of material fact regarding the series of transactions requiring resolution at trial.

This court has analyzed the elements of § 550(b)(1) in *CCEC Asset Management Corp. v. Chemical Bank (In re Consolidated Capital Equities Corp.),* 175 B.R. 629 (Bankr. N.D.Tex.1994). The court must determine good faith on a case by case basis. 175 B.R. at 637. The parties have presented substantial summary judgment evidence regarding Southmark's financial condition, corporate governance and transactions from March 1989 to the Parks Group settlement in May

1989. Southmark contends that the court can draw only one reasonable inference from this summary judgment evidence. But the court must analyze the evidence based on the circumstances in May 1989, not on what the parties learned after the Southmark bankruptcy petition. On that test, there are genuine issues of material fact warranting trial.

This court presided over hours of hearings in the underlying Southmark bankruptcy case addressing Southmark's financial condition, financial reporting and transactions in the spring of 1989. Even after the filing of the bankruptcy petition, many of Southmark's equity holders questioned the value of Southmark's assets, and its financial statements and transactions that occurred in the spring of 1989. This court recognized the legitimacy of the equity holders inquiry by authorizing the Official Committee of Equity Holders to investigate the matter and by compensating the examiner for also reporting on the circumstances that resulted in the bankruptcy petition. *Southmark*, 113 B.R. at 283–284.

The court concludes that there are genuine issues of material fact regarding each of the elements of § 550(b)(1) requiring trial.

Assuming the court enters a money judgment for Southmark under § 550, Southmark contends that it should be awarded prejudgment interest. Bankruptcy courts have equitable discretion to award prejudgment interest on avoided preferential payments. *Sigmon v. Royal Cake Co. (In re Cybermech)*, 13 F.3d 818, 822 (4th Cir.1994); *Wilson v. First Nat'l (In re Missionary Baptist)*, 69 B.R. 536, 538 (Bankr.N.D.Tex.1987).

In exercising its discretion, the court should consider the facts and circumstances of each case. Southmark filed its complaint on June 19, 1991, seeking $3.3 million from Schulte, Roth. The Code's definitions of right to payment and liability for that right to payment turn on non-bankruptcy law. *Grogan v. Garner*, 498 U.S. 279, 283, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991); *See, also, Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Schulte, Roth had no reason to believe that a non-bankruptcy court would find Southmark liable for the Parks Group costs and expenses prior to the settlement until the Fifth Circuit's ruling. Southmark did not narrow its demand on Schulte, Roth to $1,000,000 until September 11, 1996. Since that time the parties have moved aggressively to resolve this litigation. Under the facts and circumstances of this case, prejudgment interest should be awarded but only from September 11, 1996.

Assuming Southmark obtains a money judgment that Schulte, Roth satisfies, Schulte, Roth contends that it should receive a claim in Southmark's bankruptcy case. Indeed, 11 U.S.C. § 502(h) recognizes that Schulte, Roth could assert a claim.

Southmark moves for a partial summary judgment on the ground that Schulte, Roth would not have an allowable claim against Southmark. While Schulte, Roth cross-moves for summary judgment on this issue, Schulte, Roth's brief recognizes that the resolution of its claim is better addressed at trial.

As the law of this case, the Parks Group had a claim against Southmark. The claim was resolved by the settlement of May 24, 1989. The settlement agreement provided that Southmark will reimburse the Parks Group for its costs and expenses, including legal fees, incurred in conducting the proxy contest and related litigation. Southmark negotiated the settlement agreement with the knowledge that Schulte, Roth provided the legal services to the Parks Group.

Schulte, Roth contends that the settlement agreement resulted in Schulte, Roth becoming a third party beneficiary that could assert a right to payment under non-bankruptcy law. At the hearing on the summary judgment motions, Schulte, Roth also contended that it could assert a right to payment under non-bankruptcy subrogation rights. In the event of a payment of $1,000,000 by Schulte, Roth to Southmark, Southmark would not have fulfilled its settlement obligations to the Parks Group, which could also result in the transfer or assignment of a claim by the Parks Group to Schulte, Roth. Should Southmark prevail at trial on the § 550(a)(2) issue, one or more of these con-

tentions would necessarily ripen for adjudication.

 Furthermore, it is axiomatic that when a defendant pays a money judgment under 11 U.S.C. §§ 547 and 550, the defendant obtains a claim in the bankruptcy case. One of the purposes of the recovery is to facilitate the equitable distribution of a bankruptcy estate to all entities who have allowable rights to payments. *See In re Criswell,* 102 F.3d 1411 (5th Cir.1997). To require repayment of a preference under §§ 547 and 550 without the ability to receive a dividend appears to frustrate the statutory purpose. A money judgment for an avoided preference does not implicate the intent or motive of the parties. Rather, it implicates a Congressionally mandated redistribution of otherwise properly distributed property. The defendant who satisfies the money judgment should, in the statutory scheme, share in the redistribution. But should a defendant who satisfies a money judgment under § 550 not hold, as a result, an allowable claim, the statute itself affords a remedy to honor the statutory scheme. Section 550(a) provides that to the extent a transfer is avoided under § 547, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property." Congress has thereby provided the court with discretion in the awarding of a money judgment to address the circumstances of an adversary proceeding. If Southmark prevails at trial on the claim issue, the "rare if not unique fact situation" of this case may compel the court, in the exercise of its discretion, to consider the amount of recovery by creditors on their claims in the Southmark bankruptcy case, in determining the amount of a money judgment.

Finally, Southmark moves for summary judgment to dismiss the Schulte, Roth counterclaim for a declaration that a Schulte, Roth claim would not be dischargeable. In response, Schulte, Roth moves to withdraw the non-dischargeability counterclaim. The court grants that request.

## ORDER

Based on the foregoing,

· **IT IS ORDERED** that Southmark's motion for a partial summary judgment establishing the elements of 11 U.S.C. § 547(b) is **GRANTED.**

IT IS **FURTHER ORDERED** that Southmark's motion for partial summary judgment dismissing Schulte, Roth's defense of 11 U.S.C. § 547(c)(1) is **GRANTED,** and that Schulte, Roth's cross-motion for summary judgment is **DENIED.**

IT IS **FURTHER ORDERED** that Southmark's motion for partial summary judgment dismissing Schulte, Roth's defense of 11 U.S.C. § 547(c)(2) is **DENIED** and the issue shall be set for trial.

IT IS **FURTHER ORDERED** that Southmark's motion for partial summary judgment concerning 11 U.S.C. §§ 550(a)(2) and 550(b) and Schulte, Roth's cross-motion for partial summary judgment are **DENIED** and the issues shall be set for trial.

IT IS **FURTHER ORDERED** that Southmark's motion for partial summary judgment on the issue of prejudgment interest is **GRANTED** in part, and Schulte, Roth's cross-motion for partial summary judgment is **DENIED** in part. In the event of the entry of a money judgment against Schulte, Roth, the judgment shall bear prejudgment interest from September 11, 1996.

IT IS **FURTHER ORDERED** that Southmark's motion for partial summary judgment on the allowance of a claim for Schulte, Roth in the event of the payment of a money judgment, and Schulte, Roth's cross-motion for summary judgment on this issue are **DENIED** and the issue shall be set for trial.

IT IS **FURTHER ORDERED** that Schulte, Roth's motion to withdraw its counterclaim for a declaration that a Schulte, Roth claim would not be dischargeable is **GRANTED.**

IT IS **THEREFORE FURTHER ORDERED** that Southmark's motion for partial summary judgment dismissing the non-dischargeability counterclaim is **DENIED** as moot.

These orders shall be included in the final judgment ultimately entered in this matter.