**In re Beverly C. JOSEY, Debtor.**

**James H. BONE, Chapter 13 Trustee, Plaintiff,**

**v.**

**David L. JUDAH, Defendant.**

**Bankruptcy No. 92–70816.**
**Adv. No. 96–6106.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 16, 1996.

James H. Bone, Chapter 13 Trustee, Atlanta, Georgia.

No attorneys for Defendant.

*ORDER*

JOYCE BIHARY, Bankruptcy Judge.

This matter came before the Court for hearing on April 11, 1996, pursuant to the Court's Order and Notice entered March 6, 1996. The Order and Notice recited that plaintiff has alleged a complaint of professional misconduct by defendant David L. Judah within the meaning of LR 110–6(b), NDGa. LR 110–6, NDGa., is the Local Rule for the federal District Court for the Northern District of Georgia dealing with discipline of attorneys by the Court. LR 110–6 is made applicable to bankruptcy proceedings by LR 705–1, NDGa.

The Order and Notice stated that plaintiff requests that defendant David L. Judah be suspended from practice before the United States Bankruptcy Court in the Northern District of Georgia. Plaintiff James H. Bone, the Chapter 13 Trustee, was present at the April 11, 1996 hearing, as was Heidi A. Feinman on behalf of the United States Trustee. Defendant David L. Judah failed to appear at the hearing, and he was not represented by counsel.

Immediately prior to the hearing, the Court received a faxed affidavit from an attorney, Douglas Lee Price. Mr. Price practices in Eatonton, Georgia, and he identified himself as an old law school friend of Mr. Judah's. Mr. Price indicates that Mr. Judah is ill and unable to properly handle his cases or meet his obligations to his clients without the assistance of another lawyer acting on his behalf. Mr. Price states that in late March of 1996, he had "every known article of Mr. Judah's law practice" moved to Mr. Price's office in Eatonton, Georgia, and that Mr. Judah's telephone calls and mail are being forwarded to Mr. Price's office. On April 6, 1996, Mr. Price took all of Mr. Judah's active files and recently dismissed bankruptcy case files to the law offices of Berry, Heller & Wilson. The affidavit describes Mr. Price's efforts to have bankruptcy counsel handle all of Mr. Judah's active files and recently dismissed files. Mr. Price believes Mr. Judah is out of the state, but he does not know where.

Mr. Bone announced at the hearing that he had been in recent communication with Mr. Price and with the General Counsel's office of the State Bar of Georgia. Mr. Bone announced that he believed Mr. Judah's current pending bankruptcy caseload would be handled by attorneys who would be responsive to Mr. Judah's clients. However, Mr. Bone was concerned that Mr. Judah not be allowed to file any more bankruptcy cases, or be permitted to take any more fees from the public for filing bankruptcy cases, pending resolution of disciplinary proceedings against him by the State Bar of Georgia. To that end, Mr. Bone presented both documentary evidence and the testimony of a number of witnesses. After considering the evidence, the Court makes the following findings of fact.

In *In re Beverly C. Josey*, Case No. 92–70816, Mr. Judah took monies from his client in trust, did not use the funds for the purpose intended, and had no justification for his improper handling of these funds. Many of the facts regarding this matter are set forth in the Court's Order of March 6, 1996. Additional evidence regarding this matter was presented at the hearing on April 11, 1996.

Ms. Josey filed her petition on June 30, 1992, and her Chapter 13 plan was confirmed on September 1, 1992, calling for monthly payments of $510.00 to the Chapter 13 Trustee.[1] In mid–1995, debtor contacted Mr. Judah to obtain a payoff amount to pay her case in full and obtain her discharge. Ms. Josey testified that Mr. Judah told her she needed $13,179.38 to pay off her debts. On June 1, 1995, after receiving a disbursement from a 401(k) account with her former employer, Ms. Josey purchased a cashier's check, No. 061043, from Trust Company Bank in the amount of $13,179.38. (Plaintiff's Ex. 4.) The check was made payable to the order of "Chapter 13 Trustee." Debtor gave the check to Mr. Judah to give to the Chapter 13 Trustee to pay off the Chapter 13 plan. Notwithstanding the fact that the cashier's check was made payable to the Chapter 13 Trustee, Mr. Judah endorsed the

---

**1.** In a Chapter 13 case, the debtor makes payments to the Chapter 13 Trustee who in turn distributes monies to creditors.

check himself and deposited it into one of his bank accounts at First Union Bank, account number 2080000181633. Instead of paying off the balance due under debtor's plan, Mr. Judah made only three small payments to the Chapter 13 Trustee: one in the amount of $1,630.00 on June 21, 1995; $700.00 five months later on November 21, 1995; and $700.00 on February 23, 1996.

In February of 1996, Ms. Josey received a notice from the Chapter 13 Trustee's office that her case was in arrears and would be dismissed. Ms. Josey contacted the Chapter 13 Trustee's office and learned that the Trustee's office had never received Ms. Josey's $13,179.38 cashier's check from Mr. Judah.

Mr. Judah testified at the March 5, 1996 hearing in this matter that the remaining proceeds of Ms. Josey's cashier's check ($10,149.38) were on deposit in his IOLTA[2] account at First Union Bank. (3/5/96 Hr'g Tr. at 13.) Gene O'Neal, Supervisor of Records at First Union Bank, testified on April 11, 1996 that Ms. Josey's cashier's check had been deposited in one of Mr. Judah's accounts at First Union, account number 2080000181633, on June 8, 1995. This account was one of five accounts Mr. Judah maintained at First Union, and this was described by the witness as an IOLTA account. However, in July of 1995, the minimum balance in that account was $2,333.79, and the minimum balance continued to fall during the next three months until Mr. Judah withdrew $427.70 and closed the IOLTA account on October 16, 1995. Thus, Mr. Judah appears to have depleted the trust fund account into which Ms. Josey's funds were deposited by October 16, 1995.

In the March 6, 1996 Order, the Court ordered Mr. Judah to disgorge $10,149.38, and Mr. Bone reports that Mr. Judah did comply with that direction. However, the March 6, 1996 Order also required Mr. Judah to disgorge the attorney's fees that he had received in Ms. Josey's case which the Chapter 13 Trustee calculated at $475.00. Since Mr. Judah appeared to question the figure supplied by the Chapter 13 Trustee, the Court gave him until March 11, 1996, to

respond in writing if he disputed the amount and to disgorge all fees paid to him in the case by paying Ms. Josey that amount in certified funds. The record reflects that Mr. Judah has not filed any response, and Ms. Josey credibly testified on April 11, 1996 that Mr. Judah has not disgorged her attorney's fees.

In the March 6, 1996 Order, the Court also ordered Mr. Judah to prepare a report listing all pending bankruptcy cases in this district where he represented the debtor. For each case, he was to set forth the name and social security number of the debtor, the bankruptcy case number, and a complete disclosure and explanation of the amount and date of any and all payments he received from, or on behalf of, the debtor, debtor's relatives, or any entity owned by the debtor, as attorney's fees in the particular bankruptcy case or for any other purpose. Mr. Judah was ordered to file this report in this adversary proceeding and serve Mr. Bone, Regina Thomas, Chapter 13 Trustee, and the United States Trustee. The record reflects no such report being filed with the Court or served on the required parties.

There are a number of bankruptcy cases in the Northern District of Georgia where Mr. Judah has failed to appear at scheduled hearings, failed to file required pleadings for his clients, or where he has taken attorney's fees without proper application and disclosure under the Bankruptcy Code and Rules.

In *In re Fulton Hardware, Inc.*, Case No. 95–76720, Mr. Judah filed a Chapter 11 petition on November 22, 1995 on behalf of Fulton Hardware. Mr. Judah never filed the required schedules or statement of financial affairs, and he failed to appear at the § 341 meeting of creditors. The required schedules and statements are described in Fed. R.Bankr.P. 1007(b), and they include a full statement of assets, liabilities, income and expenditures. The § 341 meeting of creditors is a significant event in a bankruptcy case, and usually presents the first opportunity for the Trustee, the United States Trustee, and the creditors to examine the debtor and to determine the accuracy of

---

2. "IOLTA" stands for Interest on Lawyers Trust Accounts.

debtor's schedules and the prospects of creditors being paid. Attorneys for debtors cannot adequately represent their clients if they fail to appear at the § 341 meeting.

The United States Trustee moved to dismiss or convert the *Fulton Hardware* case. Ted H. Reed, the debtor's attorney-in-fact and general agent, responded to the motion, indicating Mr. Judah had failed to return telephone calls or do any work in the case. Judge Massey entered an order to show cause on February 26, 1996, requiring Mr. Judah to appear on March 14, 1996 and explain why he should not be required to disgorge fees he took in the amount of $5,000.00. Mr. Judah did not appear at the hearing. Judge Massey found that Mr. Judah had abandoned the debtor, and had refused and failed to perform any services for the debtor, other than filing the petition. On March 19, 1996, Judge Massey ordered Mr. Judah to disgorge the $5,000.00 payment to Ted H. Reed by March 25, 1996. At the April 11, 1996 hearing, Mr. Reed testified credibly regarding Mr. Judah's neglect and confirmed that Mr. Judah had not disgorged the $5,000.00.

Mr. Judah represented a Chapter 13 debtor, Ms. Sheila Brants, in Case No. 94–75603, assigned to the undersigned. Mr. Brants, the debtor's ex-husband, paid Mr. Judah $1,500.00 in attorney's fees which were not disclosed under § 329 of the Bankruptcy Code or under Bankruptcy Rule 2016(b).[3] At the confirmation hearing in the Brants case in October of 1995, counsel for the Chapter 13 Trustee specifically asked Mr. Judah about the undisclosed and unapproved fees, and he wrote out an explanation for her. That explanation was marked as Trustee's Exhibit 4–1 in the March 5, 1996 hearing. This was a hand-written statement dated October 14, 1995, stating that Mr. Judah received funds from Mr. Brants for "other services which have not yet been performed." The note says "should these services not be completed within the next 30 days, I will gladly return any unused fees to Mr. Brants." Mr. Judah did not return these funds.

At the March 5, 1996 hearing, Mr. Judah testified that the $1,500.00 was for estate planning work, not bankruptcy work. However, Mr. Judah admitted that he had not done any estate planning work for the Brants, but testified that he had returned the $1,500.00 the week before the March hearing. (3/5/96 Hr'g Tr. at 25.) Allen Brants testified that he had given Mr. Judah the $1,500.00 for the Chapter 13 case and that no estate planning work was ever contemplated. (3/5/96 Hr'g Tr. at 43–44.) He also testified that Mr. Judah had not returned any of the funds. (3/5/96 Hr'g Tr. at 44.) Mr. Judah declined to ask Mr. Brants any questions.

At the April 11, 1996 hearing, plaintiff introduced affidavits from the Brants stating that they still have not received the refund of the $1,500.00 in attorney's fees paid to Mr. Judah. Thus, Mr. Judah took a fee from Mr. Brants, failed to disclose the fees, never performed the work, promised to return the money and did not do so, and testified that he returned the money when he has not done so.

In the case of *In re Jerry Gregory Mason,* Case No. 95–73794, Mr. Judah failed to appear at a reset confirmation hearing in the debtor's Chapter 13 case on January 23, 1996. On January 24, 1996, Judge Cotton entered an order directing Mr. Judah to show cause why his attorney's fees should not be reviewed and appropriate sanctions imposed for failure to appear. A hearing on the matter was scheduled for March 5, 1996. At the March 5, 1996 hearing, Mr. Bone, Mr. Judah, and the debtor were all present. Mr. Judah had received a $2,500.00 retainer from the debtor, which he did not disclose in answer to Question 9 in the Statement of Financial Affairs.[4] Mr. Judah argued that the

---

3. 11 U.S.C. § 329 requires a debtor's attorney to file a statement of compensation paid or agreed to be paid. Fed.R.Bankr.P. 2016(b) requires this statement to be filed within 15 days of the order of relief, or whenever directed by the court, regardless of whether the debtor's counsel makes a fee application.

4. Question No. 9 states "List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case."

$2,500.00 paid was to resolve debtor's tax problems with the IRS. Judge Cotton found that Mr. Judah willfully and deliberately violated the Bankruptcy Code by soliciting fees from the debtor, which he failed to disclose. (3/5/96 Hr'g Tr. at 26.) He also found that Mr. Judah intentionally and willfully failed to properly represent his client before the court when he did not attend the confirmation hearing. (3/5/96 Hr'g Tr. at 27.)

In the case of *In re Terry and Margie Sanders*, Case No. 93–67382, the debtors filed a Chapter 13 case on May 19, 1993, retaining David Judah as their attorney. Debtors fell behind in their plan payments. The Chapter 13 Trustee filed a motion to dismiss, which was scheduled before the undersigned for December 12, 1995. Neither debtors nor Mr. Judah appeared and the case was dismissed. Debtors made a motion to reopen the case, which was set for a hearing on January 23, 1996. Once again, neither debtors nor Mr. Judah appeared, and the motion was denied. Debtors then filed a motion to reconsider, which the Court set for a hearing on March 11, 1996. The Court's Order and Notice dated February 28, 1996 setting a hearing explicitly required Mr. Judah to make an appearance. Mr. Judah did not appear at this hearing, but the debtors were present. Mrs. Sanders explained that Mr. Judah told her she did not have to appear at either the December 12, 1995, or the January 23, 1996 hearing, and that he would appear at the hearings for the Sanders. (3/11/96 Hr'g Tr. at 5–8.) She also testified that Mr. Judah failed to return her telephone calls.

Mr. Robert Guggenheim, an attorney, testified at the April 11, 1996 hearing that he retained Mr. Judah to file his bankruptcy, *In re Robert Guggenheim*, Case No. 96–61921. Mr. Judah only filed a "skeletal" petition on Mr. Guggenheim's behalf. Mr. Judah failed to file required schedules and then failed to appear at the § 341 meeting of creditors and at two hearings on a motion for relief from the automatic stay. Mr. Gary Huggins also testified at the April 11, 1996 hearing that he paid Mr. Judah $1,500.00 to file a Chapter 7 case for him, *In re Gary Huggins*, Case No. 96–62978. All Mr. Judah did was file a one-page, skeletal petition. Once again, Mr. Judah failed to file the required schedules and failed to appear on behalf of Mr. Huggins at the scheduled § 341 meeting of creditors.

The Chapter 13 Trustee also introduced evidence that Mr. Judah filed cases on behalf of the following debtors, but failed to appear at their scheduled § 341 meetings of creditors:

| Debtor | Case Number | Judge | Date Mr. Judah Failed to Appear |
|---|---|---|---|
| *In re Ruby Rooks* | 96–60049 | A.D. Kahn | February 9, 1996 |
| *In re James Tyson* | 95–77076 | A.D. Kahn | March 1, 1996 |
| *In re Clarence Jones* | 96–61917 | J. Bihary | March 20, 1996 |
| *In re Larry Moon* | 96–61920 | J. Bihary | March 20, 1996 |
| *In re Carlton Fray* | 96–61951 | J. Bihary | March 20, 1996 |
| *In re Godfrey Burks* | 95–66133 | J. Bihary | July 19, 1995 |
| *In re Charles Terry* | 95–69339 | J. Bihary | September 11, 1995 |
| *In re Eagle Machine Mfg.* | 95–76191 | H. Robinson | January 11, 1996 |
| *In re Cheryl Dukes* | 95–77275 | R. Brizendine | October 18, 1995 |

Mr. Judah represented the following debtors and failed to appear at the scheduled confirmation hearings on their Chapter 13 plans: *In re Louvella Miller*, Case No. 95–66066 (Judge Robert E. Brizendine), confirmation hearing scheduled on July 11, 1995; and *In re Cheryl Dukes*, Case No. 95–77275 (Judge Brizendine), confirmation hearing scheduled on November 16, 1995. In the case of *In re Cynthia Hilton*, Case No. 95–73793 (Judge A. David Kahn), Mr. Judah appeared at the January 10, 1996 confirmation hearing and was given ten days to file an amendment to the plan. He failed to file the required amendment.

In the Chapter 11 cases of *In re MKR Corp., Inc.*, Case No. 95–71108, and *In re Monteray Indus., Inc.*, Case No. 94–64685,

Mr. Judah also failed to appear at hearings. In *MKR*, the hearing was before Judge Kahn on January 4, 1996. In *Monteray*, Mr. Judah failed to appear before Judge Cotton at a hearing on March 18, 1996 on an order to show cause why the final administrative expense report had not been filed. The Court found that Mr. Judah had "abandoned the debtor." (*See* 3/18/96 Hr'g Tr. at 3.)

The professional misconduct clearly justifies further inquiry, and a copy of this Order will be referred promptly to the State Bar of Georgia for use in its continued investigation and prosecution. Under LR 110–6(a), when a lawyer admitted to practice in the District Court is suspended or disbarred from the practice by the Supreme Court of Georgia, the disbarment or suspension operates as an automatic suspension of the attorney's right to practice in this Court.

■ Local Rule 110–6(b) provides for the reference of a disciplinary matter to the Court's Committee on Discipline for investigation, notwithstanding concurrent reference of the matter to the State Disciplinary Board of the State Bar of Georgia. This procedure is used when professional misconduct by an attorney warrants consideration of prompt disciplinary action by the District Court regarding the attorney's right to practice before the Court. In this case, the State Bar of Georgia is presently investigating the allegations regarding Mr. Judah and may institute procedures to effect an emergency suspension from the practice of law in the State of Georgia. Accordingly, plaintiff is directed to file a pleading in this adversary proceeding within thirty (30) days, advising the Court of the status of the actions taken by the State Bar of Georgia. Upon receipt of such report, the Court will determine whether this matter should be simultaneously referred to the Court's Committee on Discipline or whether such action would be duplicative.

■ The Local Rule also provides that nothing contained therein shall limit the right of an individual judge to manage the cases assigned to the judge, which right shall include the authority to impose monetary penalties, to disqualify counsel from participation in a particular case, and to impose any other penalties or sanctions which may be appropriate in a particular case. Plaintiff has requested that Mr. Judah be suspended from practice before the Bankruptcy Court for the Northern District of Georgia, pending the completion of the investigation and prosecution of disciplinary proceedings against him by the State Bar of Georgia. Plaintiff makes this request, because disciplinary proceedings by the District Court's Committee on Discipline and disciplinary proceedings by the State Bar of Georgia, even on an emergency basis, may still take as long as six months. In the meantime, plaintiff is concerned that Mr. Judah not be permitted to file any new cases in the Bankruptcy Court for the Northern District of Georgia. The Court shares that concern given Mr. Judah's handling of clients' funds in the *Josey Satterfield*, the *Fulton Hardware*, and the *Sheila Brants* cases, his failure to appear and represent his clients in many other cases discussed above in the Bankruptcy Court, his failure to comply with Court Orders entered by the Bankruptcy Court, including this Court's Order of March 6, 1996 and Judge Massey's Order of March 19, 1996, his failure to disclose fees taken in bankruptcy cases as required by the Bankruptcy Code and the Bankruptcy Rules, and his failure to appear or be represented at the April 11, 1996 hearing.

■ While there are many cases stating that the Bankruptcy Court has both the express and inherent authority to discipline the attorneys who practice before it,[5] temporary suspension of the right to practice law in a given court is a very serious sanction. Nonetheless, the public must be protected from a practitioner who has abandoned his practice and is unable to represent his clients. Mr. Judah testified in March of 1996 that he had 200 to 300 bankruptcy cases pending in this district. Mr. Price has advised the Court that Mr. Judah is not able to handle any of these cases.

Consumer debtors and small business debtors in bankruptcy are particularly vulnerable clients. The integrity of the bank-

---

5.  *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575  (11th Cir.1995).

ruptcy system depends in large part upon the honesty and competence of debtor's counsel. Court supervision of bankruptcy attorneys and their fees is a well-established concept. The Bankruptcy Code contains a number of provisions governing the employment of attorneys, the debtor's transactions with attorneys, and the compensation of attorneys. §§ 327, 328, 329 and 330 of the Bankruptcy Code. Given the evidence presented, plaintiff has established a real danger to the public if Mr. Judah is permitted to take new bankruptcy clients, take new fees, file new petitions, and then fail to represent these debtors.

Mr. Judah's failure to appear or be represented at the hearing on April 11, 1996 is inexcusable, and the Court believes he was given fair and adequate notice that his conduct may warrant the suspension of his right to practice law in the Bankruptcy Court for the Northern District of Georgia. However, to assure that all due process is accorded, Mr. Judah is ordered to appear on **May 9, 1996, at 2:00 P.M.,** in **COURTROOM 1402, UNITED STATES COURTHOUSE, 75 SPRING STREET, ATLANTA, GEORGIA,** and show cause why he should not be enjoined from filing any new cases in the Bankruptcy Court for the Northern District of Georgia, pending completion of the pending investigation and disciplinary proceedings by the State Bar of Georgia.

IT IS SO ORDERED.