**In re Angie L. DAVILA; Debtor.**

**Daniel E. O'CONNELL, Standing Chapter 13 Trustee, Plaintiff,**

v.

**Frank E. MANN, III, Defendant.**

**Bankruptcy No. 94–44142–H5–7.
Adversary No. 96–4419.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Dec. 6, 1996.

H. Gray Burks, IV, Houston, TX, for Plaintiff.

Arne M. Ray, Houston, TX, for Defendant.

## MEMORANDUM OPINION REGARDING FEE DISGORGEMENT

KAREN K. BROWN, Bankruptcy Judge.

Before the Court is the complaint of Daniel E. O'Connell, Standing Chapter 13 Trustee, against Frank E. Mann, III, seeking the reduction or disallowance of attorney's fees previously unobjected to in 155 Chapter 13 bankruptcy cases, the disgorgement of any excessive fees already received, and modification of the confirmed plans awarding attorneys fees. Also before the Court is the Court's sua sponte order to show cause why Frank E. Mann, III should not be barred from practice before this Judge. This Court has jurisdiction of this proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding.

In the main case, *In re Angie Davila,* case no. 94–44142–H5–7, this Court found by order dated April 4, 1996, docket entry number 72, that, among other things, it was Frank Mann's standard practice to accept and negotiate checks dated as of the date of the bankruptcy case filing in an attempt to contravene the bankruptcy laws and accept payment for attorneys fees without court approval, that Mann has violated the local rules of this Court by falsifying the values of and assets listed in clients' schedules, that Mann has suborned perjury of each client he has urged to sign falsified schedules and statements of affairs, that by requiring his clients to make false oaths and to conceal property of the estate, Mann has subjected his clients to potential denial of a discharge for violating 11 U.S.C. § 727 and has subjected himself as well as his clients to prosecution for bankruptcy crimes under 18 U.S.C. §§ 152, 154, and 157.

This Court found that Frank Mann's falsification of court documents violates Fed. R.Bankr.P. 9011, the Texas Disciplinary Rules of Professional Conduct and the Bank-

ruptcy Local Rules of the Southern District of Texas. Thus, this Court ordered Daniel O'Connell, the standing chapter 13 trustee, to cease all payments to Frank Mann in all cases pending before this Judge and ordered that Mann may file a motion in any case pending before this Judge in order to justify a requested fee in accordance with the requirements of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). A copy of the order was sent to the United States Trustee, the State Bar Grievance Committee, and the Admissions and Grievance Committee for the Southern District of Texas.

In light of Mann's failure to institute any action in his cases pending before this Court to prove up his prior fee requests in accordance with Fifth Circuit law for awards of attorneys fees in bankruptcy cases, *see Johnson supra*, Daniel O'Connell instituted the instant action to conform all cases filed by Frank Mann pending before this Court to the Court's order in *In re Angie Davila.*

Mann began filing bankruptcy cases in 1992 without significant prior bankruptcy experience. He initially pursued clients who were facing foreclosures on their homes and then began advertising in the yellow pages and eventually on television. As his advertising increased, his clients increased dramatically. From the inception of his bankruptcy practice, Mann had little knowledge of bankruptcy law. To compensate for his lack of knowledge and to assist him in representing his clients, Mann hired and continues to hire legal assistants who purport to have some bankruptcy experience. Over time, Mann has discovered that the legal assistants he has hired do not possess the bankruptcy expertise he originally expected them to have. Mann blames these legal assistants and their lack of expertise for the numerous and egregious errors in gathering and processing information from clients and in preparing pleadings which have been exposed in this adversary proceeding. Yet Mann continues to rely on these legal assistants to perform the vast majority of work on his cases.[1] Similarly, Mann has from the inception of his bankruptcy practice and continuing to the present expected the bankruptcy trustees who are assigned to his cases to inform him if there are errors in his clients' schedules, plans, or other pleadings. If the trustee fails to raise an objection, Mann believes that he has complied with bankruptcy law.

Mann has in the past and continues to file schedules for clients with inaccurate disclosure of their income and assets. At the inception of his bankruptcy practice, in filling out a debtor's list of assets, Mann personally set the values of his client's possessions because in his view all of his clients overestimated the value of their possessions. The Court finds that this practice has changed, but not for the better; now Mann's legal assistants set these values. Initially, Mann had a form for internal office use which provided for itemization of client assets, but Mann routinely struck through such itemization and did not include such in the clients' schedules assigning instead his own value for his clients' assets as a lump sum. Mann blames his forms and computer software for his failure to itemize his clients' assets as required by the Bankruptcy Code and local rule.[2] Mann blames the trustees assigned to his cases for not requiring him to provide itemized information in his clients' schedules.

When Mann began itemizing client assets, he provided guidelines for his legal assistants to use for asset values. He claims they were instructed to obtain actual values from the clients but one or more of them failed to do so and used the amounts contained in his guidelines in preparing schedules filed with the court. Mann blames his legal assistants for these erroneously prepared pleadings.

It has not been the practice of Mann's office to request clients to fill out the official form bankruptcy schedules in order to obtain

---

**1.** Toward the end of this trial Mann fired Carol Ayers, his senior legal assistant who trained his other legal assistants.

**2.** The Court notes that at least since 1989 the local rules of the Bankruptcy Courts for the Southern District of Texas have required a debtor's schedules to contain a detailed inventory of the debtor's assets with a separate valuation for each item.

a complete listing of their assets and liabilities. Instead, the clients are given a client questionnaire prepared by Mann's office. The questionnaire asks for information concerning home and car payments and the status of any impending foreclosure or repossessions as well as employment information. The client questionnaire lacks sufficient detail to provide accurate information concerning client assets.

Mann currently employs 16 office workers, including two attorneys besides himself and six legal assistants. Mann's office files approximately 100 new bankruptcy cases per month. According to the United States District Court Clerk's Office, Southern District of Texas, from January 1, 1996 through December 3, 1996, Mann filed in the Southern District of Texas alone a total of 792 new chapter 13 and chapter 7 cases of which 154 were assigned to the undersigned judge.

It is Mann's policy to process all cases in the same manner. A new client receives a client questionnaire from Mann's receptionist. After completing the questionnaire, the client meets with a legal assistant who reviews the completed questionnaire. The client then may meet with an attorney. There was no testimony as to how long such meetings generally last or the subjects of discussion but apparently the attorney introduces the employment agreement at this point. The attorney does not explain the employment agreement in detail or the duties of a debtor in bankruptcy. If the client decides to retain the firm, the client meets with a different legal assistant to review the employment agreement in detail. This paralegal undertakes to explain the duties of a debtor in bankruptcy such as the consequences of failing to attend the creditors meeting and failing to make plan payments to the trustee. The client then pays a down payment on the agreed attorney fee and is given an inventory sheet to complete and return with copies of his bills from which Mann's office gets the address of the client's creditors.

Yet another person in the office "in puts" the client's information into a computer to create the bankruptcy pleadings. The "in putter" may call the client after they have left the office for additional information. During the course of in putting, the in putter decides whether sufficient information has been provided or whether additional information is required. Information shown in Mann's internal client files frequently does not match the information reflected on the debtors' schedules Mann's office files with the Court. Mann blames his in putters for failing to schedule assets shown in his client questionnaires. Now, Mann believes he has checks in place to eliminate such errors. He has hired more personnel to assist the in putters and Mann alleges that he "spot checks" the work done.

After the pleadings have been prepared, a legal assistant calls the client to make an appointment for the client to review and sign the schedules prepared by the office for filing with the court. The client meets with the in putter to review the schedules and sign the petition. Until this meeting, which does not involve an attorney, the client has not seen the official form of the schedules required to be filed with the court. The client has not been informed of the level of detail and itemization required for accurate schedules under the Bankruptcy Code and Rules. Mann admits that his clients would not know they are to disclose anything but the information he requests on his internal forms until the client has actually signed the schedules prepared by his office. Thus, Mann's office practices assure inadequate and inaccurate disclosure of information on his client's schedules which are signed by the client under penalty of perjury. Mann, however, blames his clients for inaccuracies in their schedules because his clients are "basically irresponsible."

After the client has signed the petition and left the office, the client's file is stacked with other client files outside Mann's office to await his review and signature. There may be from ten to twenty files awaiting review at any one time.

A legal assistant supervises the day-to-day operations of Mann's office personnel. Only if the legal assistant considers any client question to be a legal question would an attorney become involved in completing a client's files.

Mann has little involvement in the day-to-day operations of his law practice and little contact with his clients or the courthouse. Mann has not in the last two years attended any creditor's meetings or confirmation hearings with his clients. Another lawyer who may or may not have ever previously met the client appears at the creditor's meeting and/or the confirmation hearing with the client. Prior to October of 1995, this other lawyer would not have been a member of Mann's law firm, but, rather, would have been a contract attorney who officed elsewhere.

Amendments to schedules or the plan are done by legal assistants without attorney involvement. Prior to April 1996, the client may not have signed the amendments to their pleadings but instead a legal assistant might sign the pleading with the client's name, attempting to imitate the client's signature. Similarly, until this Court's order issued in the Davila main case dated April 4, 1996, Mann did not actually sign his name to client pleadings; rather, office personnel stamped his name to the pleadings. Mann claims to have stopped this practice but testimony at trial revealed that his office personnel continue to be allowed to use his signature stamp for various purposes. Mann blames his use of a signature stamp on having seen judges of this court use them on individual orders.

Claiming ignorance of the illegality of the practice, Mann obtained payments for his legal services from clients after the filing of their bankruptcies which he hid from the bankruptcy court and trustees in his cases. Mann falsified his disclosures of compensation which are required to be filed with the court under Fed.R.Bankr.P. Rule 2016. Mann's failure to disclose the fees he received constitutes a fraud on this Court. Mann pursued collection efforts against at least one client who had failed to complete the improper fee payments and threatened the client with dismissal of his case if the client did not complete the payments to Mann's office. Mann's practice of receiving non-disclosed fee payments postpetition does not simply result in false information in his fee disclosures filed with the Court, but,

more importantly, his receipt of undisclosed fees postpetition means that all of his client's net disposable income is not disclosed and committed to making plan payments. In no case did Mann increase his clients' plan payments to creditors to account for the increased monthly cash available to the debtors once fee payments to Mann were no longer being made under the table. Thus, Mann's practice of requiring non-disclosed postpetition fee payments from postpetition income of the debtor necessarily rendered inaccurate the list of debtor's monthly expenses required to be filed with the court from which is calculated the debtor's net disposable income and consequently the debtor's required plan payments.

Mann has organized his office so that no attorney has more than the most minimal contact with clients. Mann has allowed poorly trained paralegals whose work he does not oversee or direct to perform the overwhelming majority of client contact, discourse, and instruction. While this results in an apparently highly profitable operation for Mann, it precludes any but the most accidental accuracy in client pleadings, and superficial client understanding of the bankruptcy process and of their duties as debtors under the Bankruptcy Code and Rules. Mann admits that over one-third of the cases his office filed in 1995 contain discrepancies from the information reflected in his internal client files. To date, Mann continues to fail to accurately disclose client income and client assets in the schedules filed with the Court. Only when a trustee catches these errors and persists in obtaining amendments, does Mann amend his client's pleadings to correct inaccuracies.

Mann contends that he has set office policies for performing client work to ensure the accuracy of pleadings filed with the Court. Time and again, however, the evidence at trial revealed that his policies, if such exist, have not been followed. This Court does not credit Mann's testimony that he is improving his office procedures to eliminate errors in the pleadings filed with the court.

Mann's employees are inadequately trained and supervised. Mann does not properly inform his clients of the bankruptcy process or of their duties as debtors.

Mann's delegation of almost all client contact and pleading preparation to non-attorneys guarantees that his clients receive very little, if any, accurate legal advice.[3] The substitution of his client questionnaire for the official schedules for gathering asset and debt information coupled with the lack of attorney follow-up on the answers provided by the client creates the opportunity for discrepancies between the information required to be disclosed in client pleadings filed with the Court and what is actually disclosed. Given that Mann is a licensed attorney, a potential client might reasonably expect actual legal advice from Mann tailored to his individual needs, but, since the structure of the operations at Mann's office provides for no attorney responsibility for the information contained in the pleadings and no continuous attorney oversight of the file or continuous attorney contact with the client, any legal advice to clients is necessarily uninformed and haphazard. Moreover, the Court finds that Frank Mann is not competent in bankruptcy matters despite attending continuing legal education seminars on bankruptcy law.[4]

Based on the testimony of the witnesses and given the lack of dispensation of legal advice inherent in the structure of Mann's operation, his services amount to little more than a large scale petition preparer service for which Mann receives an unreasonably high fee. Congress amended the Bankruptcy Code in 1994 to provide statutory requirements and sanctions to control the preparation and filing of bankruptcy pleadings by non-attorney bankruptcy petition preparers on behalf of debtors and the fees charged for such services. *See* 11 U.S.C. § 110. Because Mann is a licensed attorney, however, he and his office personnel avoid the statutory sanctions provided by 11 U.S.C. § 110. Nevertheless, as an attorney, Mann is subject to Court review of his fees under 11 U.S.C. §§ 329, 330 and Fed.R.Bank.P. Rule 2017.

■■■ The trustee seeks reduction or disallowance of payments to Mann in each of the 155 cases addressed in this adversary proceeding. *See* Mann's Exhibit "A", admitted at trial. Under 11 U.S.C. § 1329, the trustee may request postconfirmation plan modifications to adjust the amount paid to a class in confirmed chapter 13 plans. *See* 11 U.S.C. § 1329; *In re Witkowski*, 16 F.3d 739, 742 (7th Cir.1994). Confirmation of a chapter 13 plan does not foreclose reevaluation of appropriate attorney fees at any time. *See In re Josey*, 195 B.R. 511 (Bankr.N.D.1996). The *Josey* court ordered disgorgement of attorney fees paid to debtor's counsel four years after confirmation of the debtor's chapter 13 plan. As stated by the *Josey* court:

> Consumer debtors and small business debtors in bankruptcy are particularly vulnerable clients. The integrity of the bankruptcy system depends in large part upon the honesty and competence of debtor's counsel. Court supervision of bankruptcy attorneys and their fees is a well-established concept. The Bankruptcy Code contains a number of provisions governing the employment of attorneys, the debtor's transaction with attorneys, and the compensation of attorneys. §§ 327, 328, 329 and 330 of the Bankruptcy Code.

195 B.R. at 516–517. Even in the context of a chapter 11 case after substantial consummation of a confirmed plan, the bankruptcy court has jurisdiction to review and approve attorney fees. *In re DN Associates*, 165 B.R. 344 (Bankr.D.Me.1994);

Alternatively, to the extent that the orders in the 155 cases confirming the plans providing for payment of Mann's attorneys fees may be construed as final orders, the Court revisits Mann's fee requests in these cases

---

3. While Mann has recently hired a competent attorney named James Lesyna, the structure of the office relegates Lesyna to repairing the errors once they are detected by third parties. Lesyna himself is dependent on a fundamentally flawed operation which cannot be cured by his efforts.

4. In responding to the trustee's challenge of whether his clients were devoting all net disposable income to their plan when their budget in-

cluded monthly payments for a four wheel all terrain vehicle, Mann explained that he needed to determine whether this item was exempt property. Whether an item is exempt, however, is not determinative or even relevant to the issue of whether a debtor's use of funds to purchase it is an expenditure for the maintenance or support of the debtor or a dependent of the debtor under 11 U.S.C. § 1325(b)(2)(A).

pursuant to Fed.R.Bankr.P. 9024 and Fed. R.Civ.P. Rule 60(b). *See In re Southmark Corp.*, 181 B.R. 291 (Bankr.N.D.Tex.1995) (Bankruptcy court in chapter 11 case reconsidered under Rule 9024 a final award of compensation entered in the case three years previously and ordered disgorgement where fee applicant's non-disclosure of matters constituted a fraud on the court.)

■ Under Fed.R.Bankr.P. Rule 2017, the Court, pursuant to a request by a party in interest under subparagraph (a) or on its on motion under subparagraph (b) may review debtor's attorney fees paid either prepetition or postpetition to determine whether they are excessive. "This rule, like § 60d of the Act and § 329 of the Code, is premised on the need for and appropriateness of judicial scrutiny of arrangements between a debtor against overreaching by an officer of the court who is in a peculiarly advantageous position to impose on both the creditors and his client." Fed.R.Bankr.P. Rule 2017, Advisory Committee Note.

■ Failure to disclose a fee arrangement under 11 U.S.C. § 329 or filing a false statement under Rule 2016(b), warrants denial of attorney fees. *In re Prudhomme*, 43 F.3d 1000 (5th Cir.1995); *In re Cupboards*, 190 B.R. 969 (Bankr.M.D.Fla.1996). "[T]he failure to comply with the Bankruptcy Code or Rules provisions regarding the retention and compensation of professionals is a very serious matter." *In re Statmore*, 176 B.R. 508, 509 (Bankr.D.Neb.1994), aff'd 176 B.R. 512 (1994). (Court found that debtor's attorney's activities warranted suspension from practice before the bankruptcy court.)

■ The Fifth Circuit requires attorneys fees to be evaluated under the factors described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974). The *Johnson* factors are as follows:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

*Johnson*, 488 F.2d at 719. Mann has made no attempt to support an award of fees in any of the subject 155 cases under these *Johnson* factors; therefore, the Court finds that based on the *Johnson* factors, no awar of fees is appropriate in any of the 155 cases. Mann has come forward with no time records to substantiate any of the fees claimed in any of his cases. Indeed, he admits that he keeps no time records. Mann does keep a transaction log for each of his cases which is intended to reflect which employee performed which task in each case, but Mann admits that these records are incomplete. Mann's records do not reflect accurately who performed what task and no attempt is made to record time spent performing any task. The fact form and fee statements Mann has filed in these 155 cases do not reflect time actually expended on the tasks listed. Mann contends that in a volume practice it is just not feasible to keep time records. This Court would note that numerous consumer-specialist attorneys handling heavy chapter 13 case loads are able to accomplish this task and regularly submit time records to this Court to justify fees. The Court finds that any fees paid for legal services performed by Frank Mann or under his supervision are excessive and are, therefore, denied.

It is, therefore, **ORDERED** that Frank E. Mann III shall withdraw as counsel from each of the 155 cases and any cases subsequently filed before this Judge; it is further **ORDERED** that the confirmed plans in each of the 155 cases are modified to disallow fees to the Law Offices of Frank E. Mann III; it

is further **ORDERED** that Mann shall disgorge to the trustee all fees previously received for these 155 cases and for subsequently filed cases within ten days of this order; it is further **ORDERED** that all fees in these 155 cases and any subsequently filed cases are denied to the Law Offices of Frank E. Mann III; it is further **ORDERED** that Frank E. Mann III is suspended from practice before this Judge pending review by the Admissions and Grievance Committee; it is further **ORDERED** that no contract or Mann-employed counsel may proceed with clients obtained through and processed by the Law Offices of Frank E. Mann III.

It is **ORDERED** that Daniel E. O'Connell, chapter 13 trustee, submit a proposal to this Court for redistribution of these fees in accordance with the Bankruptcy Code within thirty days; it is further **ORDERED** that the trustee shall continue to monitor and collect these fees subject to disgorgement; it is further **ORDERED** that the trustee is to prepare a proposed final judgment calculating the monies to be disgorged.

This Court will maintain jurisdiction over this matter to insure compliance.